Our second case of the day is A.C. against the Martinsville School District. Mr. Zimmerle. Opposing counsel, Chief Judge, may it please the court. The statutory safe harbor at the crux of this case, 20 U.S.C. section 1686, allows schools to maintain separate living facilities for the different sexes. This court and the district courts below have never expressly addressed section 1686. But I don't understand anyone to be contesting that. They all say, fine, separate facilities. This case is the next level down. How do you sort, basically? It's not separate facilities. So it seems to me you're arguing about something that's not an issue. Your Honor, we would contest that that is what is at issue. Ultimately, the schools are seeking to maintain those separate facilities based on sex. Well, but can't you see how you're eliding the question? The question is, what does that require? How do you sort? Who belongs in the boys' room? Who belongs in the girls' room? And what indicia do you use for that? Your position is that you use the sex designation on the birth certificate, as I understand it. The position of the plaintiff, plaintiffs really, we have the two cases together, is that you use the gender designation that the person uses. Those are two different ways of sorting, and it seems to me that's the issue before us. Your Honor, that may be the case in terms of, yes, the position that's being taken by the plaintiffs is that they should be allowed access to the boys' restrooms and locker rooms based on their gender identity. Because they're boys. Yes, that is how they identify. That's their position. I know it's not your position. I don't want to put words in your mouth, but their position. So isn't that what we need to zero in on? How do you sort? It's not like you've got to abolish all the boys' restrooms in the schools. Indeed, they would be very upset if you did. Yes, Your Honor. Our position is that the court needs to look at the statutory text in light of Bostick and that the court must address the safe harbor and apply it. In doing so, this court should revisit Whitaker and reverse the orders that were entered below. Specifically with regard to Title IX, we believe that it's important to look at the statutory text and that the court has to follow that statutory framework that's set by Congress. In doing so, it's important to recognize the guidance that's given by the Supreme Court in Bostick. And in Bostick, Bostick's a Title VII case. And there, the Supreme Court declined to extend its ruling to the facility context in either Title VII or Title IX. You're quite right. It leaves that issue open. But the court does say in Bostick that if you're just talking about classifications, a classification of a transgender person is inherently one based on sex. Now, what you do about that, what the other parts of Title IX may say, again, I recognize the court has signaled we're not saying yes, we're not saying no. We're just saving it for another day, which they do all the time. That's fine. That's their job. I don't quite understand if you're asking me a question, Your Honor. I'm just saying that we do get some guidance from Bostick about how we should think about the transgender classification because the court says in a very simple declarative sentence that to classify on the basis of gender identity is inherently to classify on the basis of sex. Yes, correct, Your Honor. And the court also said that— And we're not really free to disregard that, are we? We're not free to disregard that, but the court also said that homosexuality and transgender status are distinct concepts from sex. And in looking to the statutory text then in Title IX— Well, they're derivative of sex, though. I mean, use the words you want. I'm happy to use the words the Supreme Court used. I don't know that I should rewrite their opinion. That's higher than our grade level. It's way higher. So the court is to look to the statutory text. Title IX begins in 1681 with a prohibition on discrimination based upon sex. No person shall on the basis of sex be subjected to discrimination under any education program or activity. I have a factual question. Other than Whitaker and the decisions in the Fourth and Eleventh Circuits, have other circuits tackled this issue? Your Honor, the Sixth Circuit did in the Dobbs decision that we've cited to the court only in the context of whether or not to stay a plenary injunction that had been entered below. So we've cited to that case as well. Not a final decision. So the answer is no? No, Your Honor. Okay. And in going back to the statutory text, Whitaker focused on 1681, but that's not all that Title IX says. In enacting Title IX, Congress created several express exceptions to that general rule based upon the differences between the sexes. Specifically, Title IX allows for separate living facilities based upon sex, and it is an interpretive mandate where it says interpretation with respect to living facilities. So, counsel, getting back to this idea that Judge Wood raised about sorting. So as I understand it, all three plaintiffs now have birth certificates that designate them as male. Is that correct? That's correct, Your Honor. And so presumably the state of Indiana, the judiciary at least, has ordered that their birth certificates be designated as male. What, if any, bearing should that have on our decision? Your Honor, I don't think that it should have any bearing on this court's decision. And if you don't, then who decides? So if the court, right, you have a birth certificate. Let's say you have a new enrollee come into your school system. Yes. And they present a birth certificate, and it says, I am male. Is it the school's role then to sit back and say, well, I don't know, because you don't really look all that male to me. Prove to me that you're what we think is male, right? Is that how the system should work? That is not the way the system should work, and it's not the way the system works. In this particular instance, when the students enrolled in the schools, they enrolled with their sex indicated as male. So let's say these students then enroll in the neighborhood district, okay, and now they have a birth certificate, right? And so then under your rules, then in the other school, they should be allowed to use the restaurants, right, the boys' restaurants, because now they have a birth certificate that they've shown to their new school. So what you're saying is just a matter of when someone applies to a particular school system. Doesn't that seem rather arbitrary? No, Your Honor. In that particular instance, the hypothetical you presented, I would suppose it would be based upon whatever policy that particular school had, what they would look at. And so if another transgender male student came into your school system and had a birth certificate that designated that person as male because they received a court order the year before they moved into your school district, under the rules of your school district, you would allow that student to use the boys' bathroom. I believe that would be the case, Your Honor. And so the school didn't have any other indication that somehow their biological sex was other than what's indicated on their birth certificate. So, Your Honor, looking to— That's an interesting position. So you would let them use—I mean, it seems to encourage, I don't know, let's say a lack of disclosure because if the person comes in with sex designation already saying male, you're saying that you don't require them all to go to the health clinic and strip them down and take a look and see if you think they are male. You accept that. If a parent or guardian goes to the counselor and says there are other, you know, psychological challenges or challenges that the person is having, it would behoove them not to reveal to the school district that the reason the designation is male is because of a court order, not because of what happened at birth.  Your Honor, I don't know that that instance has ever come up before the court, and so it would present separate facts for the school district to deal with in that particular situation. But, Counsel, wouldn't that situation also just undermine the government interest the school claims it has? If your policy would allow, you know, transgender students to use the bathroom of their choice, new students, and wouldn't screen them otherwise, what about all of the concerns that the school raised in the briefs about privacy concerns about other students and all of these other kind of interests the school claims it has? It would seem to undermine the school's position, the district's position, that all of those interests are so important that it would require this policy. Well, Your Honor, I don't know that the privacy interest here is in question. It's a privacy interest that's been recognized by the Supreme Court in the United States versus Virginia by recognizing this court. No, no, no. I'm not quibbling about whether or not it's a valid governmental interest per se. I'm just saying in this instance, your policy, the justification you provide for the school's policy of using birth certificates in this particular instance with regard to these three students is that it would infringe upon the privacy interests of other students. Yet the same policy would allow newly enrolled transgender students to use the bathrooms of their choice. So in those instances, the policy justifications, I suppose, wouldn't really come up or wouldn't really be valid? Well, Your Honor, in that hypothetical that you presented, all the indicia that the school has received at that point in time is that this student is the biological sex that appears on their birth certificate. Isn't there an empirical question here? I mean, on this record, maybe on some other record, it would look different. But on this record, it appears that the boys' rooms in the school have a certain number of stalls, that it's quite possible to respect everybody's privacy, including that of the transgender students, or maybe somebody else who just prefers to handle things privately. I suppose if you had a boys' room where there were no stalls whatsoever, maybe there would be a privacy interest because you would be exposed to someone's body in a way you didn't want to be. But I don't know. I'm worried that there's an empirical quality to this argument that's not being recognized. Well, Your Honor, this does raise separate issues than were raised in Whitaker with regard to the physical spaces that are at issue. With regard to Vigo County, the locker rooms and the showers are such that they are wide open spaces. Well, and the showers were excluded from the district court's injunction. That's correct. The district court's injunction does not require you to allow them to have access to the people in question, the two in question. So it seems to me that issue is not before us. It's not in the injunction. That's correct, Your Honor. The only thing that's in the injunction are places where there are privacy stalls available. Well, and the locker rooms that are wide open spaces. While the plaintiffs have indicated that they will use the stalls in the locker rooms, there's nothing in the preliminary injunction order that prevents them from having unfettered access to the locker rooms themselves. And with regard to those spaces— But there are stalls in the locker rooms. So if they're changing their clothes—I mean, I think they're just changing into gym suits. I don't know why they're changing their clothes in a way that would compromise anyone's privacy. Your Honor, with regard to the position we're taking here, we're looking more deeply at the other sort of ramifications for this court's ruling as it relates to— No untoward incidents. It was just a staff member who was worried about it. That's correct, Your Honor. Which is exactly the same as Whitaker. It's very similar to Whitaker in that respect, Your Honor. But our position is that the statutory scheme was not addressed by this court in Whitaker, and ultimately this court needs to look to Section 1686 and the regulatory framework because there are all sorts of implications for this court's position if a student is allowed to use a restroom or a locker room or a shower space based on their gender identity rather than their sex. It has implications with regard to residential hall bedrooms, with regard to sports, with regard to the— Shouldn't we take a page from the Supreme Court and just decide the case that's before us? I mean, it seems to me maybe there are different arguments that would be made in those contexts. I'd be perfectly happy to be modest. Your Honor, this court cannot disregard the fact that there is this implementing regulation and a statutory scheme and that whatever this court decides in relation to this case has implications with regard to those other cases that would be coming before the court. And so what the court sort of characterizes as a simple request in Whitaker has far-reaching implications with regard to all other aspects of the educational space. I see that I'd like to reserve the remainder of my time. Thank you. You have 40 seconds left. Mr. Falk. Good morning. May it please the Court. These cases are, of course, controlled by Whitaker, but there are some facts here which are different than Whitaker. Martensville allows transgender youth to use restrooms consistent with their gender identity at the high school level. So all the concerns about privacy that are raised in this case by Martensville make no sense. They have conceded them already for transgender students. Now, Vigo County has a written policy that's in the record at 43-2 in the district court record that purports to allow transgender students to use the restrooms consistent with their gender identity. But during a deposition, they said, oh, and by the way, they also have to have surgery. Well, you can't have genital surgery under the age of 18. That's a very common rule, isn't it? I mean, again, that's an Indiana rule, but it seems to me it's quite normal. Yes, my understanding is that because of who is making the decision for whom, that the doctors will not do that and it's not recommended prior to 18 for the genitals or surgery. So we don't have a situation like Whitaker where it's never been discussed, never been thought of, never been heard about. Here we have two school systems that have concretely determined there might be situations where transgender students can, and in Martensville, actually do use the restroom. So we're even further along than Whitaker. And as Judge Wood noted, Whitaker has been strengthened. It's been reinforced by Bostic. Bostic, of course, a Title VII case. But in Bostic, the court said clearly that if a person is discriminated against who's transgender, it's unavoidable that they're being discriminated because of their sex identified today as opposed to when they were born. And that's Whitaker. That's making a decision based on gender nonconforming. That's exactly what Whitaker held. And as Judge Easterbrook noted, yes, there is a split in the circuits. The Eleventh Circuit recently went the other way. But of course, in Grimm, the Fourth Circuit followed Whitaker. And we do have also the Third Circuit in the Boyerton Area School District case, which denied a preliminary injunction to cisgender students who wanted to block transgender students having access to restrooms and locker rooms, saying that would be a Title IX violation, potentially. So it has been spoken to in those regards. But there's no reason to reconsider Whitaker. This is on all fours with Whitaker. Locker rooms, different than bathrooms. However, this is a preliminary injunction. We have to look at the record. And as Judge Wood noted, the record in this case is that they are not going to use the showers. In fact, the boys indicated in their affidavits that no one uses the showers to the best of their understanding. They'll use the stalls. Other people can use the stalls. So what's in the record about a commitment on their part to use the stalls when they're changing their clothes into their gym outfits? Your Honor, I apologize. I'd have to go back and look. But I think they were always quite clear that they were never in any way interested in looking at any other people. They want to get in and out as quickly as possible, but they want to get in and out as boys. And again, the cases that have been brought, like the Boyerton case or the parents for privacy case, where students or parents have brought challenging transgender students having access to bathrooms and locker rooms, have all said, look, the school can make some sort of accommodations for them. They can go to the nurse's restroom and change and go to the bathroom. You can erect shower curtains or what have you in the shower if that's what you want to do. But you cannot put the burden on the transgender student because that only aggravates his gender dysphoria. And the record of the case is absolutely clear. There is no contrary evidence to this record that disputes the fact that being denied the access to this most basic form of their development and their social transition use of male facilities was extremely harmful, both physically and mentally. So could I just confirm, we have, I think Whitaker itself recognizes, but it's been recognized as far as I know, that it is perfectly all right for the school district to require documentation of the gender dysphoria diagnosis, that this isn't just some frivolous, hey, I want to go to the men's locker room and scope out everybody, that the school can have criteria that it follows. Of course, like anything else. I need to be excused every 15 minutes to use the restroom because I have some sort of medical situation. Well, the school doesn't have to listen to that unless there's medical documentation. And here there's no doubt that the three boys are receiving gender-affirming care through Riley Gender Health Clinic. And, you know, the other thing, Your Honors, is looking at the boys in B, E, and S, C, they've been on male hormones since November of 2021. And the evidence is clear that after a year you develop male characteristics. I have not seen them, but the evidence is that generally you get a beard, you have muscle changes, you become male. And for some reason it seems odd that the schools are saying we want these boys to be in women's rooms, in girls' rooms. It would seem to me that's where the privacy issue is. They're not girls. And Whitaker recognizes that. And if the school feels there's other evidence, they'll have plenty of time to bring it to court. These are preliminary injunctions, but the record in this case is clear. The district courts properly followed Whitaker, and there's absolutely no reason to overturn Whitaker. And I would point out the school keeps asserting 20 U.S.C. 1686, which concerns separate living facilities. These aren't separate living facilities. They're separate toilets. So you would concede that we can save for another day some of those issues? Of course, Your Honor. Yes. Of course, Your Honor. But although the school has- Asking a lawyer whether he would like to engage in more litigation seems an odd question. It's what we do, Your Honor, but- Indeed so. But the bottom line is Whitaker remains good law. And the schools have never come out and said, we want you to overturn Whitaker. Well, this case may be on its way to- Or this case or the 11th Circuit's case or somebody's case might be on its way to the Supreme Court. Yes. And it's unclear what we can do to improve the Supreme Court's understanding of the issue. I agree, Your Honor. But as far as the 7th Circuit is concerned, the 7th Circuit spoke in Whitaker and this is Whitaker with actually better facts. Thank you. One might think that the 11th Circuit's en banc decision already provides all of the options the justices might want. And then some. One might. It is interesting that the 11th Circuit never once mentions this court's decision in Whitaker. So the line has been drawn. Thank you, Your Honors. Thank you. Mr. Zimmerle. Yes, Your Honor. What this court can provide in terms of further guidance is looking at the specific statutory text and the differences between what appears in Title IX versus Title VII. Title VII, which this court applied in Whitaker, isn't concerned with facilities. It has no statutory safe harbor similar to Section 1686. And it doesn't have the sort of implementing regulations that we've applied here. And so what we've asked the court to do is to look at that statutory text and the implementing regulations and apply it to the facts of this case where there is no dispute with regard to the biological sex of the students being female. For these reasons, Your Honor, we respectfully request that the court reverse the preliminary injunction orders entered below and remand. Thank you. Thank you, counsel. The case is taken under advisement.